MARY A. CANNADY *vs.* MATTHEW LYNCH and wife.

February 5, 1881.

**Competency of Witness—Of Unsound Mind.**—Gen. St. 1878, *c.* 73, § 9, subd. 1, disqualifies persons of unsound mind or intoxicated to be witnesses only when unsound or intoxicated to a degree that would exclude them at common law. Persons are competent if, when offered, they have such an understanding as enables them to retain in memory the events of which they have been witnesses, and gives them a knowledge of right and wrong sufficient to appreciate the sanctity and binding force and obligation of an oath.

**Same—Competency—How Determined.**—The trial court must determine a witness' competency when he is offered,—the pleadings do not determine it. The trial court need not examine a witness as to his fitness to testify unless, when he is offered, it see some indication of his unfitness.

**Practice—Objections to Evidence.**—Application of the rule that objections to evidence offered must be definitely stated.

**Witness as to Appearance of Person whose Sanity is in Question.**—The question, does a person appear to be well or ill, or does he act like a sane or insane person? may be asked of any witness who has observed the fact, though he be not an expert.

Plaintiff brought this action in the district court for McLeod county, to recover damages for ill-treatment by the defendants, with whom she had lived for several years. The case was tried before *Macdonald,* J., and a jury, who returned a verdict for plaintiff for $5,000. The defendants moved for a new trial, which was denied, and they appealed.

In her complaint plaintiff alleged: "That, by reason and in consequence of the said several acts and doings committed by defendants, as aforesaid, plaintiff has suffered," etc., "and that plaintiff became deranged in her mind, and became insane, and was adjudged to be insane by the probate court of Washington county, Minnesota, and was sent, by order of said court, to the asylum for the insane, at St. Peter, where she is informed and believes she was confined as an insane person for about two years, and that she was discharged

therefrom in the month of 'May, 1879.' That plaintiff is informed and believes that, by reason of the several acts and doings of the defendants, as aforesaid, she will always be weak in mind and body," etc. The plaintiff was sworn as a witness, and the defendants objected to her testifying, because it appeared from her complaint that she came within the provision of statute (Gen. St. 1878, c. 73, § 9,) excluding a person of unsound mind from being a witness. The objection was overruled, and defendants excepted.

*J. V. V. Lewis* and *H. J. Peck*, for appellants.

*Edson & Little*, for respondent.

GILFILLAN, C. J. The statute (Gen. St. 1878, c. 73, § 7,) provides : "All persons, except as hereinafter provided, having the power and faculty to perceive, and make known their perceptions to others, may be witnesses." Section 9 provides : "The following persons are not competent to testify in any action or proceeding : *First,* those who are of unsound mind, or intoxicated, at the time of their production for examination." At common law the rule of exclusion, so far as it related to such persons, was : "All persons who are examined as witnesses must be fully possessed of their understanding,—that is, such an understanding as enables them to retain in memory the events of which they have been witnesses, and gives them a knowledge of right and wrong; that, therefore, idiots and lunatics, while under the influence of their malady, not possessing this share of understanding, are excluded;" and it was the same with intoxicated persons. *Hartford* v. *Palmer*, 16 John. 142.

The rule of qualification under the statute is more liberal and less exclusive than at common law. It admits to be witnesses many who, at common law, would be incompetent. It would be contrary to the general tenor and spirit of the statute to construe the first subdivision of section 9 as intending to exclude, on account of mental unsoundness or intoxication, those who, at common law, would be competent. The terms "of unsound mind" and "intoxicated" are very indefinite. It

is a matter of common observation that persons may be mentally unsound on some subjects, and as to others as sound as people generally; or may be in some degree unsound, or to some extent intoxicated, and yet be capable of recollecting past events accurately, and possess the ability and appreciate the duty to relate them truly, as fully as persons who are sober, and in all respects of sound mind. It is not to be supposed that the statute intends to disqualify such persons. It is more reasonable to suppose it intends to exclude persons as witnesses only when unsound or intoxicated to a degree that would exclude them at common law; that it intends to affirm the common-law rule on the subject, and admit persons as witnesses when, at the time they are offered to be sworn, they are possessed of "such an understanding as enables them to retain in memory the events of which they have been witnesses, and gives them a knowledge of right and wrong" sufficient to appreciate the sanctity and binding force and obligation of an oath.

If a person offered as a witness must be tested by this rule, it is evident the test must be applied by the trial court at the time of offering him. His condition at that time must determine his competency. This cannot be established by the allegations of the pleadings. It is not the purpose or office of pleadings to ascertain or make or present any issue on the competency of witnesses to be sworn on the trial. The trial court may take into account the allegations and admissions in the pleadings bearing on the mental condition of any person offered as a witness, as it may resort to any other evidence to ascertain the fact; but they are not to be taken as conclusively determining such condition. The court below did not err in overruling defendants' objection to plaintiff as a witness, based on the allegation in her complaint that she at one time became insane. It was not the duty of the trial court to examine plaintiff as to her mental soundness, merely because defendant alleged her to be unsound, unless it saw in her some indication of unfitness to testify. It must be pre-

sumed that the court declined to examine her because it saw no such indication. The testimony (hers, and that of the other witnesses,) so far as appears by the record, justified the action of the court.

Two of the defendants' exceptions may be decided together. Both were to the overruling of objections to questions put to Dr. Dorsey, a witness for plaintiff. Plaintiff had testified to blows inflicted by defendants on one of her arms, without specifying whether the right or left. Other witnesses had testified to marks and bruises, after the alleged striking, on one of her arms, without specifying which arm. At the trial she exhibited both arms to the jury. One of them seems to have attracted notice from its having apparently sustained some injury. The question to the witness was, "Will you state to the jury what is the matter of that arm?" This was objected to as incompetent and immaterial. The specific objection to its materiality here is that it does not appear from the evidence that the arm referred to was the one struck by defendants. There being evidence that, soon after the alleged illtreatment of plaintiff by defendants, she became subject to hysteria, and Dr. Dorsey having testified that he had heard all the testimony in the case, plaintiff's counsel asked him this question: "Assuming the testimony given here to be true as to the treatment of this plaintiff by the defendants, would that have any tendency to produce the hysteria?" The objection on the trial was that it was "incompetent and immaterial." The specific objection made here is that the question includes all the "treatment," good and bad,—some acts of which, such as boarding, lodging and clothing plaintiff, are not complained of as wrongful,—and that the cause of the hysteria was immaterial, unless it was defendants' wrongful acts. This objection, had it been expressed at the trial, would have been rather hypercritical. The objection made below to each of the questions, that it was "incompetent and immaterial," was not sufficiently definite to present to the court below the precise point of objection made here.

This court has laid down the rule that "a party objecting to the introduction of evidence must state his point so definitely that the court may intelligently rule upon it, and the opposite party may, if the case will admit of it, remove the objection by other evidence." *Gilbert* v. *Thompson*, 14 Minn. 544. This is a rule which tends to promote frankness and fair-dealing in trial of causes. Evidence offered may be so manifestly immaterial that merely mentioning the general designation "immaterial" will direct attention at once to the precise point intended; as if, in an action on a promissory note, evidence of an assault were offered. But it often happens that evidence, otherwise proper, may be technically immaterial, because of the want of evidence of some fact to connect it with the matters in controversy. Where, as in this case, a considerable time has been occupied, and a good deal of evidence taken in the trial, the general objection to evidence offered, that it is immaterial, may not, and in this case it is evident it did not, direct the attention of the court and opposite party to a defect in the evidence already taken. We are satisfied that neither the court below nor the plaintiff's counsel understood by the objection made that defendants claimed the evidence did not show that the arm referred to in the question was the arm struck by defendants, and we doubt if it was in the mind of defendants' counsel when the objection was made. Had the objection been stated below as definitely as it is presented here, two or three words of testimony might have removed it. Had the objection urged here against the second question we have quoted been made below as definitely as here, the insertion of a single word— the word "ill" before the word "treatment"—would have removed the objection, which, as made here, is rather to the form or phraseology of the question than to the character of evidence indicated by it.

In the case of each question the specific point made here presents a point which we are satisfied was not presented to the mind of the court below, nor of the plaintiff's counsel,

and we will therefore not consider whether there is or is not anything in the point.

The questions as to the apparent physical condition of plaintiff, and as to whether she acted like a sane or insane person, were such that any witness, though not an expert, might answer if he knew the facts. That a person appears to be well or ill, or that he acts sanely or otherwise, are things open to the senses and observation, and do not require scientific or special knowledge to determine. The evidence as to plaintiff's ailments offered by plaintiff, and objected to by defendants, even if objectionable, could not have done any harm, for there does not appear to have been any controversy as to the fact. The defendants' witnesses testified to it as fully as plaintiff's witnesses, so far as regarded the ailments. The only controversy appears to have been as to what caused them.

Order affirmed.